IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 1, 2017

## STATE OF TENNESSEE v. KEVIN WATKINS, III

**Appeal from the Circuit Court for Madison County**
**No. 16-272/284        Donald H. Allen, Judge**

_____

### No. W2016-02481-CCA-R3-CD
_____

The Defendant, Kevin Watkins, III, pleaded guilty to two counts of aggravated burglary and agreed to allow the trial court to determine the length and manner of service of his sentence. The trial court subsequently ordered the Defendant to serve concurrent six-year and three-year sentences in confinement. On appeal, the Defendant contends that the trial court erred when it applied two enhancement factors to his sentence and when it denied him alternative sentencing. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Matthew Headley, District Public Defender; Gregory D. Gookin, Assistant District Public Defender, Jackson, Tennessee, for the appellant, Kevin Watkins, III.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Background and Facts

On October 17, 2016, the Defendant pleaded guilty in separate indictments to two counts of aggravated burglary. The State dismissed two counts of theft of property valued at over $1,000, and two counts of vandalism over $1,000 as part of the plea agreement. The parties agreed to allow the trial court to determine the length and manner of service of the Defendant's sentences. The State recited the following facts as the basis for the acceptance of the Defendant's guilty pleas:

[T]he State would show at trial that . . . [the Defendant] did unlawfully enter a habitation without the effective consent of the owner . . . with intent to commit theft of property. There was a witness – this residence hadn't been lived in since about a month before and there was a witness who saw a vehicle there at this residence. [The witness] tried to block the vehicle in and called the sheriff. He got the tag number and the description of the vehicle. The vehicle went around him and left the scene. At that point, the sheriff responded. The owner of the property responded and found damage to the front door. I believe it's about $180 for the front door being kicked in, but not much else missing. The sheriff's department began an investigation. They did the next day locate the vehicle. The witness went to the scene and said, "This is the vehicle that I saw." They were able to run the tag numbers and they discovered that that vehicle came back to [the Defendant's] grandmother who reported that [the Defendant], her grandson, had stolen that vehicle and had taken it without her permission and used it without her permission and he was in possession of it on January the 7th of 2016. [The Defendant] was interviewed. He did admit to being the individual who broke into this residence. A juvenile petition was then later taken out against him in this matter.

That occurred in Madison County, Tennessee.

Then . . . on March the 4th of 2016, [the Defendant] did unlawfully enter a habitation without the effective consent of the owner . . . with intent to commit theft of property. On that occasion . . . [the owners] had left their house to go to the grocery I believe it was for about an hour. [The owner's] 90-plus year old mother who had early forms of dementia was at home. When they got home, their home had been burglarized. Her mother was fine, but just indicated some individuals had come into the residence. She had early staged of dementia, so they weren't able to get much more information. Quite a bit was stolen from the residence, being coins, cash, some televisions, a couple of rifles, a shotgun. There was some damage to the property. Those coins were later cashed in at Coin Star in which there was a video that was taken from that Coin Star. I believe it was a Kroger or some other location here in town. [The Defendant] was developed as a suspect. He was interviewed by the police department and he did admit to being one of the individuals who broke in . . . [to the residence] and he then somewhat exonerated . . . the co-defendant, in this matter. [The co-defendant] only pled guilty to theft of property because [the Defendant] said [the co-defendant] wasn't present for the burglary, but did assist in

2

cashing out those coins and . . . was in possession of some of the stolen property at a later date.

The trial court subsequently held a sentencing hearing, during which it admitted the presentence report as an exhibit and the parties presented the following evidence: the victim of the second burglary testified that the Defendant damaged her home and belongings, including the window in her garage, two of her bedroom doors, which had to be replaced, and that several items of property had been taken: three guns, $885.00 in coins, a purse containing $40.00, a driver's license, car keys, a garage door opener, a GPS, and two door keys. Although not clear from the record, it appears that the victim's car was stolen, and the victim testified that, when it was returned to her, she had to have the car, which had minor damage, detailed to rid it of the smell of marijuana. The victim's mother, who was home when the burglary occurred, was shaken up by the event. She passed away before the sentencing proceedings were held. The victim testified that she had filed an insurance claim for her damage and losses and had a deductible of $1000.00. The amount of damage and loss was valued at $4000.62 and insurance paid her $2303.00. She stated that the stolen purse belonged to her mother, and that, as a result of her dementia, she used it as a coping mechanism on a daily basis and "carried it with her everywhere." One of the straps on the purse was broken, indicating that it had been taken from her grasp, which she opined contributed to her mother being traumatized by the event.

Kevin Watkins, Sr., the Defendant's grandfather, testified that the Defendant had never been given a chance in life because he was raised by a mother with multiple children who was using "dope." The Defendant was tasked with caring for several of his brothers and sisters. Mr. Watkins spoke of his own past drug convictions and how the trial court had sentenced him to a short period of incarceration with the remainder on probation, which had allowed him to go to school, get his barber's license, and successfully start his own business.

At the conclusion of the hearing, the trial court stated that it was considering the evidence, exhibits, and the principles of sentencing. The trial court stated that it had considered the nature and characteristics of aggravated burglary, as a violent offense, including the fact that the victim's mother was present inside the home when the burglary was committed. The trial court noted that the Defendant had admitted his involvement to law enforcement and during his guilty plea hearing. The trial court recounted that the Defendant had not yet been charged in the first burglary incident when he committed the second burglary.

The trial court applied enhancement factor (1), that the Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. T.C.A. § 40-35-114(1) (2014). It stated that the

3

Defendant had a history of drug use, as made clear by the fact that the victim's car was returned to her with the smell of marijuana inside, to which the trial court gave "moderate weight." The trial court also gave "moderate weight" to the fact that the Defendant was a leader in the commission of the crime. T.C.A. § 40-35-114(2). The trial court further applied factor (4), that one of the victims of the offense was particularly vulnerable because of her age and mental disability, specifically dementia. T.C.A. § 40-35-114(4). To that factor the trial court gave "great weight." The trial court also applied "great weight" to factor (6), that the amount of damage to property sustained by or taken from the victim was particularly great. T.C.A. § 40-35-114(6). The trial court mentioned that it applied this factor because the Defendant had not pleaded guilty to theft despite having stolen or damaged more than $3000 worth of property. Lastly, the trial court applied factor (9), that the Defendant possessed a firearm during the commission of the offense, namely the three guns that he stole from the residence, and gave that factor "great weight." T.C.A. § 40-35-114(9). The trial court stated that it did not consider as a factor that the Defendant was released into the community following his first offense when he committed the second offense.

Addressing the Defendant's juvenile history, the trial court noted the Defendant's past offenses of public intoxication, possession of drug paraphernalia, and assault. The trial court noted in terms of mitigation that the Defendant was attending school, that both of his parents were drug users, that he stayed with his grandparents, and that he had some difficulties while growing up. The trial court considered as mitigation the Defendant's youth.

For the first aggravated burglary conviction, the trial court imposed the miminum sentence, a three-year sentence as a Range I, Standard Offender and ordered the Defendant to pay restitution to the victim. For the second aggravated burglary conviction, the trial court imposed a six-year sentence as a Range I, Standard Offender. The trial court ordered that the sentences be served concurrently in the Tennessee Department of Correction. It ordered that the Defendant pay restitution to the victim in that case as well. The trial court mentioned that it had considered judicial diversion and, referencing the enumerated factors as found in *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. 1996), found that the Defendant was not amenable to correction, particularly because he was arrested a second time after the first burglary offense. It further found that the circumstances of the second burglary offense were "exceptionally aggravated" and placed the victim's mother in fear. The trial court stated that the Defendant's history of criminal behavior and drug use also weighed against the granting of judicial diversion, as did the deterrent effect of sentencing the Defendant to incarceration. Finally, the trial court found that the granting of judicial diversion would not serve the ends of justice for the public or the Defendant. It found that a granting of probation would "unduly depreciate the seriousness of these offenses" and that the interest of protecting society from the Defendant was great. It is

4

from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred in applying two enhancement factors to his sentence and that the trial court erred in denying an alternative sentence.

## A. Enhancement Factors

The Defendant contends that the trial court erred when it applied enhancement factors (4), that that one of the victims of the offense was particularly vulnerable because of her age and mental disability, and (9), that the Defendant possessed a firearm during the commission of the offense. T.C.A. § 40-35-114(4), (9). He argues that the victim's vulnerability, specifically her advanced age and mental state, played no part in the crime. He further argues that the woman was not a named victim of the offense and that he did not know she was present inside the residence. As to factor (9), the Defendant argues that, although he admitted to stealing the weapons from the victim's home, he did not use the weapons to accomplish the offense, but that they were taken during the aggravated burglary. The State responds that the trial court properly considered and applied the enhancement factors and that, even if the trial court misapplied either of the factors, the Defendant's sentence is in compliance with the purposes and principles of sentencing. We agree with the State.

"Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

The misapplication of an enhancement or mitigating factor does not remove the

5

presumption of reasonableness from a trial court's sentencing decision. *Id.* A reviewing court should not invalidate a sentence on this basis unless the trial court wholly departed from the principles of the Sentencing Act. *Id.* So long as there are other reasons consistent with the purpose and principles of sentencing, a sentence within the appropriate range should be upheld. *Id.*

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2014).

We conclude that the trial court properly sentenced the Defendant. The trial court considered the relevant principles and sentenced the Defendant to a within range sentence. Relevant to enhancement factor (4), the evidence presented at sentencing was that the victim present inside the home when the Defendant entered was both elderly and suffering from dementia. Our supreme court has held that although advanced age alone is not the determining factor, the victim's vulnerability, physical and mental limitations of the victim are directly related to the vulnerability considered by factor (4). *See State v. Adams*, 864 S.W.2d 31, 35 (Tenn. 1993). We conclude that the evidence presented at the hearing that the victim was particularly vulnerable due to her dementia supports the trial court's application of this enhancement factor. We agree with the Defendant that the trial court inappropriately applied enhancement factor (9) on the basis that the Defendant did not employ a weapon during the commission of the crime and there was no evidence presented that he actually possessed the weapons stolen from the victim's residence; however, we note that "the application of a single enhancement factor is sufficient to justify the imposition of the maximum sentence in the range." *State v. James Moore*, No. W2015-01483-CCA-R3-CD, 2016 WL 7654955, at *5 (Tenn. Crim. App., at Jackson, Aug. 23, 2016), *no Tenn. R. App. P. 11 filed*. As such, the appropriate application of enhancement factor (4) was sufficient to enhance the Defendant's sentence. The Defendant is not entitled to relief on this issue.

**B. Denial of Alternative Sentence**

6

The Defendant next argues that the trial court erred when it denied him an alternative sentence, namely judicial diversion pursuant to Tennessee Code Annotated section 40-35-313. He contends that the factors in favor of an alternative sentence, namely his youth, lack of criminal history, and absence of failure to serve a previous alternative sentence, weigh towards the granting of judicial diversion. The State responds that the trial court properly took into account the required factors when considering judicial diversion and that its decision not to grant the same was presumptively reasonable. We agree with the State.

When a defendant is eligible for judicial diversion, a judge has the discretion to defer proceedings without entering a judgment of guilty. T.C.A. § 40-35-313(a)(1)(A) (2014). The statute states that a trial court may grant judicial diversion in appropriate cases. *Id.* Following a grant of judicial diversion, the defendant is on probation but is not considered a convicted felon. *Id.* To be eligible for judicial diversion, a defendant must be a "qualified defendant" as defined by the Tennessee Code section governing judicial diversion:

> (B)(i) As used in this subsection (a), "qualified defendant" means a defendant who
>
> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> (b) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119 or a Class A or Class B felony; and
>
> (c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(i). Eligibility does not automatically entitle the defendant to judicial diversion. *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

Once a defendant is deemed eligible for judicial diversion, the trial court must consider several factors when deciding whether to grant judicial diversion. Due to the similarities between the erstwhile procedure for pre-trial diversion, which was administered by the district attorney general, and judicial diversion, courts draw heavily from pre-trial diversion law and examine the same factors:

> [A court] should consider the defendant's criminal record, social history,

mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); *see also State v. Electroplating, Inc.*, 990 S.W.2d 211 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945 (Tenn. Crim. App. 1996).

When a trial court considers the common law factors, "specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," this Court will "apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *State v. King*, 432 S.W.3d 316, 327 (Tenn. 2014). Our Supreme Court has stated:

Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*Id.* Failure to consider the common law factors results in loss of the presumption of reasonableness, and this Court is required to conduct a *de novo* review or remand to the trial court for reconsideration. *Id.*

The record in this case demonstrates that the trial court considered the factors and identified those specifically applicable to this case. The trial court considered the seriousness and aggravated circumstances of the Defendant's offenses and the fact that he was arrested for a second offense after being released following the first; this, the trial court found, made him not amenable to correction. The trial court also considered the Defendant's past criminal behavior, drug use, and the deterrence factor associated with ordering a sentence in confinement. This factor, the trial court stated, weighed heavily in favor of denying the Defendant an alternative sentence to protect the interests of the public.

Our review of the record reveals that there is substantial evidence to support the trial court's decision. The Defendant committed two burglaries within months of each other,

8

stole a significant amount of property and damaged the homes and property he burglarized. He notably caused one of his victims, who was home at the time of the burglary, to feel significant emotional trauma. The trial court's decision largely was based on the seriousness of the offenses and their circumstances, to which it gave great weight, particularly in light of the victim's trauma and the amount of loss suffered by the owners of the residence. Based upon this evidence, we cannot conclude that the trial court abused its discretion in denying the Defendant judicial diversion. We reiterate that the trial court was not required to recite its consideration of each factor relevant to judicial diversion but only the one or ones it found relevant. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

9